MARQUETTE, Respondent, v. WILLIAMS et al, Appellant.

(222 N. W. 496.)

(File No. 6090.  Opinion filed December 20, 1928.)

*Thad L. Fuller,* of Aberdeen, and *F. C. Williams,* of Newport, Vt., for Appellant.

*Robert D. Jones,* of Milbank, and *Howard Babcock,* of Sisseton, for Respondent.

MORIARTY, C.   This action was begun by William Marquette to quiet his title to certain land in Grant county.   After the action was begun, William Marquette died, and Ella Marquette, to whom William Marquette had deeded the land, was substituted as plaintiff.

The record shows the following facts:

Prior to August 29, 1918, the defendant F. C. Williams secured title to the land in controversy.   Mr. Williams was then residing in the state of Vermont, and, while negotiating for the purchase of this land, he corresponded with Gold Bros. Security Company concerning the securing of the title, and also arranged for the making of a loan on the land through said company.   On August 29, 1918, Gold Bros. Security Company telegraphed to Williams asking him whether he would accept $65 per acre for this land, purchaser to assume $7,200 mortgage then of record, balance on or before five years at 6 per cent interest, Williams to retain 1918 crops.

On August 30, 1918, William wired acceptance of the proposition, and on the same day wrote a letter confirming the telegram.

On September 28, 1918, Williams wrote Gold Bros. Security Company, acknowledging receipt of a remittance and telling them to go ahead and close up the sale of the property at price which they wired him.

On September 28, 1918, Williams wired Gold Bros. Security Company, asking them whether he should stop at Milbank on his way home from Calgary.

Gold Bros. Security Company replied, telling Williams that he need not stop, that the first sale fell through, but have a second one lined up.

On October 31, 1918, Williams wrote the Security Company, inquiring how they were progressing with the sale of the land.

On November 4, 1918, E. S. Gold, secretary of the Security Company, wrote Williams that the farm had been sold, and delay in preparing papers was due to busy season.

A contract dated October 7, 1918, was signed by Williams and James L. Black, in which Black agrees to buy and Williams agrees to sell the land in question at a price of $15,600. To the copy of this contract put in evidence is attached a slip dated December 24, 1918, whereby Black assigns his interest in the contract to Gold Bros. Security Company, but there is no evidence to show that the fact of this assignment was communicated to Williams. The contract has indorsements upon it showing numerous payments, upon principal and interest, such payments being made by checks of Gold Bros. Security Company. The amounts so indorsed show payment of all sums due to Williams upon the contract except the sum of $5,900, as shown by the indorsement: "3/1/22 Balance due on contract $5900."

On November 27, 1920, Williams wrote Gold Bros. Security Company, asking if they would not like to take his interest in the farm.

On February 28, 1921, J. A. Gold, president of the security company wrote Williams a letter containing the following statement:

"We received your inquiry in which you understood we were owners of the Moore farm. You were misinformed. The land was sold to Taylor, who assumed the contract, who sold to Rowen. He re-sold to a local farmer named Marquette. He bought with the understanding that he was to be able to negotiate some farm loans. We were given whatever time was necessary to protect the loan.

"In the matter of the balance due you on your contract, there is a balance of principal $6900.00, plus interest on same of $414.00. We therefore enclose our draft for the interest. There should be a $500.00 payment on the principal. Mr. Samuelson, the agent for the present owner of the land, phoned me last night of some misunderstanding over the interest. I believe we can figure out a deal whereby we can clear up with you and get you out of the transaction. There is still a balance of $6900.00 principal. We

might turn you over some farm mortgages. The 1920 crop returns are disappointing and the returns from the Moore farm have not been satisfactory for three or four years. The land has been rented for a series of years."

On March 5, 1921, Williams wrote to J. A. Gold, acknowledging receipt of $414 interest and letters referring to condition of the farm.

On March 29, 1921, Williams wrote to J. A. Gold, inquiring for information regarding the Black contract, and whether the $500 payment due March 1st would be coming along soon.

On June 10, 1921, Williams wrote the Security Company, inquiring as to the $500 payment due on the principal and as to when the matter may be closed up.

On July 8, 1921, Williams wrote making further inquiries along the same line. This was followed by further letters making similar inquiries. On November 25, 1921, Williams wrote to the security company, asking: "Who now owns the Moore farm which I sold to your Mr. Black?" "What, if any, improvements have been made upon the farm since I sold it?" "When may I expect the overdue amount of $500?" "Send me a statement of the crops raised on the farm in 1920 and 1921 and the value of the crops."

On December 10, 1921, Williams wrote to J. A. Gold, president of Gold Bros. Security Company, acknowledging the receipt of the $500 due March 1, 1920, and $23.50 interest on said payment. During the year 1922, Williams wrote several letters to the security company, asking for information as to how they were progressing with the farm deal. On February 10, 1923, the president of the security company wrote Williams inclosing check for $500 to apply on the Black contract, and advising Williams that the land was in the hands of Mr. Marquette who was paying the taxes.

On February 16, 1923, Williams acknowledged receipt of the $500 check.

The undisputed evidence shows that Williams contracted to convey the land to Black at a price of $15,600; that thereafter Black assigned his interest in the contract to Gold Bros. Security Company; that this company, on October 18, 1919, contracted with one Taylor to sell the land to Taylor for $16,800; that on July 22, 1919, Taylor contracted to sell the land to one Rowen for $24,600; and that in March, 1920, Rowen contracted to convey the land to

William Marquette at $27,000. Marquette paid the full amount of the purchase price to Gold Bros. Security Company, the last payment being made about March 7, 1921. From the payments made by Marquette, the security company paid the profits due to Taylor and Rowen, and paid Williams all except $5,900 of what was due him. On March 7, 1921, the security company credited Williams with $6,900, the balance due him on the contract with Black. After that time two payments of $500 each and interest on the balance due were remitted by the security company to Williams. On May 6, 1924, the security company opened an account entitled "F. C. Williams Trust Fund," in which was shown a credit of $5,900 at that date. This was the actual amount then due to Williams to complete the payment due him on the land.

This balance was never sent to Williams, and the security company proved to be insolvent.

Leaving out of consideration the numerous technical questions raised by appellant's brief, the real question at issue is whether Williams or the Marquette estate should lose the $5,900 which some one must lose because of the failure of the security company to remit the collection, and its subsequent insolvency.

The trial court made findings to the effect that Williams was at all times fully informed by Gold Bros. Security Company as to the several contracts for the transfer of the land to William Marquette and of Marquette's possession of the land; that with full knowledge of these matters he continued to permit the security company to collect and receive the moneys due to him on his sale of the land, and instructed and requested said security company to make such collections and receive such payments for him.

From these findings the trial court made its conclusions of law that the defendant F. C. Williams clothed the Gold Bros. Security Company with actual and ostensible authority to act for and on behalf of him in collecting and receiving for him the payments of money made by William Marquette, sufficient to pay in full the amount due to said defendant for the purchase of the land; that by his acts said Williams made the said Gold Bros. Security Company his actual and ostensible agent for the receipt of the said payments; and that the payments made by the said William Marquette to said Gold Bros. Security Company to apply upon the purchase of said land were, in legal effect, made to said defendant F. C, Williams.

In accordance with these findings and conclusions, the trial court entered a decree declaring the plaintiff to be the owner of the land in controversy, subject only to a mortgage of $7,200, and the decree appointed the clerk of the court and commissioner to make a deed conveying the said land to the plaintiff, Ella Marquette, subject only to said mortgage.

From this decree, and from an order denying a new trial, the defendant F. C. Williams takes this appeal.

Appellant's assignments of error raise but two questions which seem entitled to consideration in this opinion: First, is there reversible error in the rulings of the trial court on objections to the admission of evidence? Second, is the evidence sufficient to support the trial court's findings that the defendant Williams clothed Gold Bros. Security Company with authority to collect and receive for him the moneys paid by Marquette to complete the payment of the price to be paid by Marquette for the purchase of the Williams land?

As the trial was to the court, the admission of incompetent or immaterial evidence will not constitute reversible error, if there is evidence properly admitted sufficient to support the findings of the trial court.

There is no claim that the court improperly excluded any evidence which appellant sought to introduce, so the sole question to be considered by this court is this: Is there evidence properly admitted and sufficient to support the findings of the trial court?

There is nothing in the record to show that Williams was ever informed that his contract with Black had been assigned to Gold Bros. Security Company or that he treated the payments received by him as payments made by the security company on its own account. On the contrary, the record shows that the security company informed him that they were not the owners of the land, that it had passed through the hands of Taylor and Rowen to Marquette, and that Marquette owned it, was farming it, and was paying the taxes on it.

After receiving this information, and knowing that Gold Bros. Security Company disclaimed any interest in the land, Williams continued to look to that company for the remittance of the payments due him on the sale of the land. And after Williams re-

ceived this information Marquette paid the balance of his purchase price to the security company, and the security company remitted to Williams part of the money so paid. We are satisfied that this undisputed evidence is sufficient to support the trial court's finding that defendant Williams clothed Gold Bros. Security Company with actual authority to collect and receive for him the payments made by Marquette. Knowing that Gold Bros. Security Company disclaimed any interest in the land and represented to him that Marquette was the purchaser, and, having accepted the money paid to Gold Bros. by Marquette, he cannot now he heard to say that Gold Bros. Security Company were not authorized by him to accept such payments.

There is substantial evidence to support the findings of the trial court, and no preponderance of evidence against such findings, and the findings support the conclusions and judgment. Under such circumstances the trial court's findings will not be disturbed.

We find no reversible error in the record, and the judgment and order appealed from are affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, and BROWN, JJ., concur.

CAMPBELL, J., not sitting.